UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| VANDALE GORDON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:20-cv-688-LSC-GMB |
| ) | |
| BRUCE BAXTER, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION

Plaintiff Vandale Gordon has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging violations of his rights under the Constitution or laws of the United States. Doc. 1. Gordon names Bruce Baxter as the defendant in his individual capacity and seeks monetary damages. Doc. 1 at 2 & 5. Consistent with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint has been referred to the Magistrate Judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991). For the following reasons, the Magistrate Judge recommends that the court deny Baxter's motion for summary judgment as to the Gordon's Eighth Amendment excessive force claim but grant summary judgment to Baxter as to Gordon's Fourteenth Amendment false disciplinary charge claim.

## I. PROCEDURAL HISTORY

The court entered an Order for Special Report directing the Clerk to forward

copies of the complaint to the defendant and directing the defendant to file a special report addressing the plaintiff's factual allegations. Doc. 8. The court advised the defendant that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it to be a motion for summary judgment funder Federal Rule of Civil Procedure 56. Doc. 8.

After the defendant filed a special report supplemented by affidavits and other evidence (Doc. 11), the court notified the parties that it would construe the special report as a motion for summary judgment and the plaintiff had 21 days to respond to the motion for summary judgment by filing affidavits or other evidence. Doc. 12. The court also advised the plaintiff of the consequences of any default or failure to comply with Federal Rule of Civil Procedure 56. Doc. 12 at 2–3. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). The plaintiff filed a timely response (Doc. 13), and this matter is now ripe for review.

## II. STANDARD OF REVIEW

Because the court has construed the defendant's special report as a motion for summary judgment, Federal Rule of Civil Procedure 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all

reasonable inferences against the moving party. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to produce some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained,

> [f]acts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citations omitted).

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because the plaintiff is *pro se*,

the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney." *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

### III. SUMMARY JUDGMENT FACTS[1]

**A.   The January 3, 2020 Incident**

On January 3, 2020, Gordon was located in his assigned administrative segregation cell when Officers Coberly and Stacy passed out food trays. Doc. 1 at 11. As they approached Gordon's cell, Coberly told Stacy that he needed one more tray for Gordon. Doc. 1 at 11. Gordon sat in his cell waiting for his tray. Doc. 1 at 16; Doc. 11-4. Gordon did not kick or beat the cell door as he waited. Doc. 1 at 16; Doc. 11-4.

As Baxter passed by Gordon's cell a few minutes later, Gordon asked Baxter to check on the status of his food tray. Doc. 1 at 11. Baxter responded that Gordon already received a tray. Doc. 1 at 12. Gordon became upset and demanded to be given a food tray just like every other inmate. Doc. 1 at 12. Baxter responded, "you can't demand s—t around here, you are not in charge." Doc. 1 at 12.

Coberly then confirmed to Baxter that Gordon had not received a tray. Doc. 1

---

[1] Consistent with the summary judgment standard, the following facts are undisputed or, if disputed, taken in the light most favorable to Gordon. The court addresses substantial factual disputes in the footnotes.

4

at 12. When Coberly left to attend other inmates, Gordon told Baxter that he should apologize for accusing him of lying. Doc. 1 at 12. Baxter responded, "I don't apologize to no inmate for s—t, and as a matter of fact, f—k you." Doc. 1 at 12. Baxter then pulled out a cannister of a chemical agent and discharged it into Gordon's tray flap. Doc. 1 at 12. Baxter waited approximately 30 seconds before closing the flap and walking away. Doc. 1 at 12.[2] Inmates McKellon and Thomas witnessed the incident. Doc. 1 at 12 & 16.

A few minutes later Baxter returned with Supervisor Schooley and told Schooley that Gordon threw a food tray on him. Doc. 1 at 13. Gordon responded by telling Schooley that he never received a food tray. Doc. 1 at 13. As Schooley escorted Gordon out of his cell, he asked Coberly about the food tray because there was no food on the floor. Doc. 1 at 13. Coberly answered that Gordon never received a tray. Doc. 1 at 13. Gordon received a body chart examination in the infirmary and wrote a statement about the incident. Doc. 1 at 13; Docs. 11-4 to -6.

---

[2] In his declaration in support of the motion for summary judgment, Baxter claims that Gordon was disrupting the operation of the dorm by beating on his cell door and refusing to comply with orders to stop. Doc. 11-1 at 1. According to Baxter, as he shut the tray flap on the cell door, Gordon threw a liquid substance on him. Doc. 11-1 at 1. In response, Baxter announced "gas, gas, gas" and sprayed a one-second burst of Sabre Red pepper spray in Gordon's face. Doc. 11-1 at 1–2. Baxter then locked the tray flap, reported the incident to Sergeant Schooley, and left to clean himself in the cubicle. Doc. 11-1 at 2. Baxter returned to Gordon's cell with Schooley, where he told Schooley that Gordon had thrown liquid on him. Doc. 11-1 at 2.

5

## B.     The Disciplinary Charge Against Gordon

On January 5, 2020, Baxter initiated a disciplinary charge for assault on a correctional officer by providing Gordon written notice of the allegation that he "threw an unknown liquid substance on officer Baxter." Doc. 1 at 15. At the hearing, Baxter testified that Gordon yelled at him because Gordon had not received his food tray so he shut Gordon's tray flap door, but Gordon responded by throwing a liquid through the tray flap, and only then did he use a one-second burst of pepper spray. Doc. 1 at 15. Two inmates testified that Baxter used pepper spray on Gordon for no reason. Doc. 1 at 12 & 16. Based on Baxter's testimony, the hearing officer found Gordon guilty of the infraction and imposed 45 days of disciplinary segregation, loss of privileges, and a custody review. Doc. 1 at 17.

## IV.  ANALYSIS

## A.     Eighth Amendment Excessive Force

Gordon's excessive force claim against Baxter is governed by the Eighth Amendment's prohibition of cruel and unusual punishments, which prohibits a state actor from subjecting a prisoner to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[T]he core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7

(1992). In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned that

> [m]any of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 321–22).

"The use of force must stop when the need for it to maintain or restore discipline no longer exists." *Skrtich*, 280 F.3d 1295, 1304 (11th Cir. 2002) (citing *Whitley*, 475 at 320–21). Therefore, if a non-compliant inmate has been restrained by guards and no longer poses a threat, he "cannot be subjected to gratuitous or disproportionate force that has no object but to inflict pain." *Id.*

With these concerns in mind, the Supreme Court has articulated certain factors for evaluating whether a use of force was excessive. These factors include (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible official, (4) any efforts to temper the severity of a forceful response, and (5) the extent of the injury suffered by the inmate. *Id*. at 7; *see Hewett v. Jarrad*, 786 F.2d 1080, 1085 (11th Cir. 1986). In applying these factors, the Supreme Court has instructed that not

> every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9 (citations omitted).

To create a genuine issue of material fact, a plaintiff must come forward with evidence from which a reasonable inference can be drawn that the defendant acted maliciously and sadistically. Generally, courts "do not second-guess prison officials on matters that they are better equipped to handle under the exigencies of an internal disturbance." *Wilson v. Blankenship*, 163 F.3d 1284, 1295 (11th Cir. 1998).

Applying these principles to the facts here, the court concludes that Gordon has created a genuine dispute of fact as to whether Baxter used excessive force. Taking the facts in the light most favorable to Gordon, he did not pose a threat to Baxter, and Baxter could not have reasonably perceived his requests for a food tray and an apology to pose any sort of a threat. This is especially true when considering that Gordon remained inside his cell during the entire encounter. *See Odom v. Jasper County*, 2016 WL 1254358, at *10 n.94 (M.D. Ga. Mar. 29, 2016) (finding that an arrestee's verbal insults were merely a nuisance and did not create a threat justifying the use of pepper spray because she was secured in handcuffs in the back of police car).

Accepting Gordon's version of their exchange, a reasonable juror could

conclude that Baxter utilized a chemical agent against Gordon only because Gordon's requests for a tray and an apology angered him. If proven at trial, these facts reasonably establish that Gordon's use of force "was applied . . . maliciously and sadistically to cause harm," *Hudson*, 503 U.S. at 7, since Gordon posed no threat and therefore there was no need for Baxter to use any force against him.

Baxter asserts the affirmative defense of qualified immunity in connection with Gordon's claim of excessive force. Doc. 11 at 17–21. However, "a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skrtich*, 280 F.3d at 1301.

For these reasons, the court finds that Baxter's motion for summary judgment is due to be denied as to Gordon's Eighth Amendment excessive force claim.

**B.      Fourteenth Amendment Due Process**

Gordon also claims that Baxter charged him with a false disciplinary infraction to cover up Baxter's own wrongdoing. Doc. 1 at 14. But prison inmates have no constitutionally guaranteed immunity from a false or wrongful accusation of conduct even if the accusation could result in the deprivation of a protected liberty interest. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988). As long as Gordon had the benefit of the minimum procedural due

process protections set forth in *Wolff v. McDonald*, 418 U.S. 539 (1974), he cannot recover damages for an allegedly false charge. Pursuant to *Wolff*, an inmate

> must receive: (1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action.

*O'Bryant v. Finch*, 637 F.3d 1207, 1213 (11th Cir. 2011) (citing *Wolff*, 418 U.S. at 563–67). Procedural due process is satisfied if there is "some evidence" in the record to support the finding of guilt. *Id*. (citing *Super., Mass. Corr. Inst. at Walpole v. Hill*, 472 U.S. 445, 454 (1985)).

While Gordon may not agree with the resolution of his disciplinary hearing, he was afforded sufficient due process protections, as *Wolff* directs. Specifically, he was given advance written notice of the charge against him, an opportunity to call witnesses and present a defense at the hearing, and he received a written decision setting out the hearing officer's findings. And the disciplinary report demonstrates the existence of some evidence upon which the hearing officer found Gordon guilty of the infraction—Baxter's testimony that Gordon threw a liquid substance on him. Accordingly, Baxter's motion for summary judgment should be granted as to Gordon's Fourteenth Amendment false disciplinary claim.

## V. RECOMMENDATION

For the reasons stated above, the Magistrate Judge RECOMMENDS that the

defendant's motion for summary judgment be DENIED as to the plaintiff's Eighth Amendment excessive force claim and GRANTED as to the plaintiff's Fourteenth Amendment false disciplinary claim. The Magistrate Judge further RECOMMENDS that the court refer the remaining claim back to him for further proceedings.

## VI.  NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation.  A party must file any objections with the Clerk of Court within 14 calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting.  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.  An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order.  In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations.  The district judge must conduct a hearing if required by law.  Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence.  Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record.  The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may only appeal from a final judgment entered by a district judge.

DONE and ORDERED on January 13, 2022.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE